UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PEARLIE T. TALLEY, | ) | CASE NO.:  5:05CV2421 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| FAMILY DOLLAR STORES OF OHIO, | ) | **ORDER AND DECISION** |
| INC., et al., | ) | [Resolving Doc. 93] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

This action is before the Court on the Motion for Summary Judgment of Defendants Family Dollar Stores of Ohio, Inc., John Parker, Vincent Cowles, and Ric Spring.  The motion was timely opposed by Plaintiff Pearlie Talley.  The Court has reviewed the parties' pleadings; motions, oppositions, and replies thereto; attached exhibits; and applicable law.  For the following reasons, Defendants' motion is GRANTED.

## FACTS

Defendant Family Dollar Stores of Ohio, Inc. ("Family Dollar"), is a corporation that operates low-cost retail stores.  Plaintiff began working for Family Dollar as a cashier and clerk in January 1996.  Her duties included operating the cash register, performing light cleaning throughout the store, and helping to put merchandise on display.  In September 2004, after a dispute with management over her use of a stool at her register, Plaintiff left her shift at Family Dollar and did not return.  Family Dollar officially terminated her employment in February 2005, for job abandonment.  Plaintiff

then brought suit under the Americans with Disabilities Act ("ADA"), and the employment discrimination provisions of Ohio law (Ohio Revised Code § 4112.02(A)). Plaintiff also brought a claim of intentional infliction of emotional distress.

During her employment with Family Dollar, Plaintiff worked at several Family Dollar stores throughout the Akron area and had several managers, three of whom were named as individual defendants in this suit on Plaintiff's state law discrimination claim. John Parker became a store manager in 1996, an assistant district manager in 1999, and a district manager in 2001. Just before Plaintiff's employment ended, Parker resigned from his position as district manager. Vincent Cowles was a store manager beginning in 2001. He supervised Plaintiff at two of the stores where she worked, most recently in 2003. Ric Spring became the manager in August 2004 at the last store where Plaintiff worked, and remained her manager until the end of her employment. He had not previously worked with Plaintiff.

Plaintiff suffered from a series of health problems in the time she was employed by Family Dollar. In 2001, Plaintiff tore the cruciate ligament in her knee when she attempted to move a box of merchandise. She did not have surgery, but her recovery took approximately three months, during which time she was on medical leave. In April 2003, Plaintiff suffered a heart attack and underwent quadruple bypass surgery, causing her to take approximately five months' leave from work. In March 2004, Plaintiff slipped and fell on a newly waxed floor at the store and damaged a nerve in her hip in the fall. She found standing painful, and took leave from work to recover. She returned in September, 2004.

In addition, throughout her tenure with Family Dollar, Plaintiff said she had suffered from degenerative disc disease with spinal stenosis of the cervical and lumbar spine. Plaintiff contends that the symptoms of this condition, such as pain in her legs and back, made standing for long periods of time difficult, and had worsened since she began working at Family Dollar. She claimed that as early as 1997 she had brought a stool to work and used it at her cashier station when she needed to sit down. After receiving some mixed signals from different store managers regarding her use of the stool, Mr. Parker, then district manager, told Plaintiff in March 2004, that she could no longer use her stool without a written note from a doctor expressly stating that it was necessary because of her medical condition. She did not produce such a note, despite the fact that she called Family Dollar's Human Resources Department, which confirmed Mr. Parker's directive. Soon after this, she fell in the store and took medical leave.

In July 2004, Plaintiff told Mr. Parker that she had her doctor's permission to return to work as early as August 9, 2004. According to Plaintiff, he required that any note from her doctor to that effect not place any restrictions or limitations upon her ability to work. As an exhibit to her complaint in this matter, Plaintiff provided a note from her doctor, dated July 16, 2004, giving her permission to return to work with no physical restrictions.[1]

Just before September 9, 2004, when Plaintiff next came to the store to see the work schedule, Mr. Spring required her to sign a letter stating that she would no longer use the stool. He indicated that he could not play favorites by allowing her to use the

---

[1] Plaintiff contends that she gave Mr. Spring, her direct supervisor, a different note just before she actually returned to work in early September 2004, though she could not remember the date. That note allegedly required that Plaintiff be permitted to use her stool. However, Plaintiff cannot produce any evidence of this note. Defendants contend that they were never given such a note. Plaintiff promised Mr. Spring on September 8 that she would produce this note, calling into question her assertion that she already had.

3

stool without a medical excuse, while other employees had no such benefit. Plaintiff refused to sign the letter, and instead gave Mr. Spring a letter explaining her refusal and promising to obtain a note from her doctor stating the necessity of the stool. Mr. Spring accepted this letter from Plaintiff, who understood at that point that Mr. Spring's letter never went into effect. (Pl. Depo. Tr. 109-10, 141).

Plaintiff returned to work on September 9, 2004, and did not use the stool all day. However, she said that within two hours of beginning her shift on September 10, 2004, she was in pain. She asked Mr. Spring if her sister could bring her stool to her at work. Mr. Spring refused, and said that she could either finish her shift or get a note from her doctor to indicate that the stool was necessary. She went to her doctor and returned with a note, but when she gave it to Mr. Spring he allegedly refused to open the envelope to look at it, and instead reiterated his determination to schedule a meeting among himself, the district manager and Plaintiff. The letter Plaintiff said she attempted to give to Mr. Spring contained the following restrictions: "1) Patient is to stand no longer than 60 minutes at a time 2) This is to be followed by 5-15 minutes of sitting (a stool would be beneficial)." (Ex. 3 to Pl. Depo.). Plaintiff then left Family Dollar and did not return.

Plaintiff asserted that, after September 10, 2004, she attempted to call Mr. Spring several times to see if a meeting had been arranged with the district manager. However, she has never alleged or provided evidence that she returned to Family Dollar for another shift, or that she attempted to speak with the district manager or any other Family Dollar management. She also admitted that she did not give the letter Mr. Spring refused to anyone else at Family Dollar. In February 2005, Family Dollar officially discharged Plaintiff for job abandonment.

4

**LEGAL STANDARD**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmoving party.  *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

Summary judgment is appropriate if the party that bears the burden of proof at trial does not establish an essential element of its case. *Tolton v. Am. Biodyne, Inc*., 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (Emphasis in original).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Id.* at 248.  Summary judgment should be denied if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

## ANALYSIS

**A.     Plaintiff's ADA and state law discrimination claims**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.  When a plaintiff bringing suit under the ADA attempts to show employment discrimination by circumstantial evidence, a motion for summary judgment must be considered in the context of the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The plaintiff must first make out a prima facie case of discrimination.  *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001).  The burden then shifts to the defendant to give a legitimate, non-discriminatory explanation for its actions regarding the plaintiff.  *Id.*  If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered explanation is pretextual.  *Id.*

In order to make out a prima facie case of discrimination under the ADA, a plaintiff must show "(1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability." *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).  The third element requires that a plaintiff suffer an adverse employment action.  *Plautz v. Potter*, 156 Fed. Appx. 812, 817 (6th Cir. 2005).  "An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'"  *Mitchell*

6

*v. Vanderbilt Univ.*, 389 F.3d 177, 182, quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). The Sixth Circuit Court of Appeals has found that "[e]xamples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004), citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Similarly, under Ohio law, a prima facie case of disability discrimination requires that a plaintiff show the following: "(1) that he or she was handicapped; (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *City of Columbus Civil Svc. Comm. v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998), *citing Hazlett v. Martin Chevrolet, Inc.*, 496 N.E.2d 478, 480 (Ohio, 1986). The Ohio Supreme Court has held that, because the Ohio disability discrimination laws are similar to the ADA, the Ohio courts "can look to regulations and cases interpreting the federal Act for guidance in [their] interpretation of Ohio law." *McGlone*, 697 N.E.2d at 207. *See also*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). This Court will examine the state law and ADA claims together by looking to the case law and regulations that interpret the ADA.

Although Plaintiff alleged in her Second Amended Complaint that "she has not been permitted to return to work since September 10, 2004," she has failed to show that her employer's conduct was the cause of any material change in the terms of her

7

employment. (Pl. 2d Am. Compl. para. 30). Plaintiff said that, in March 2004, Mr. Parker told her that she could no longer use her stool at work without a letter from her doctor expressly requiring that she use the stool, and she admitted that she provided no such letter. The medical letter she next provided, giving her permission to return from leave after her fall, indicated no restrictions or conditions on Plaintiff's ability to work. (Ex. 2 to Pl. Dep.).

The day before she returned from leave, Mr. Spring allegedly required her to sign a letter promising that she would not use the stool, and that she would take scheduled breaks. She refused, and gave Mr. Spring a letter explaining her refusal and promising to get a note from her doctor requiring the stool. That letter included the following: "I will obtain a physician[']s statement to indicate that I can perform my duties as required with the assistance of a stool to sit upon on a periodic basis. I will obtain, and provide that statement to you on Friday, September 10, 2004." Mr. Spring took the letter and said that he would schedule a meeting among himself, Plaintiff, and the new district manager.

Plaintiff testified that she understood that Mr. Spring's letter never went into effect. (Pl. Depo. Tr. 109-10, 141). She never testified that she was told not to come to work because she refused to sign Mr. Spring's letter. In fact, she did report to work on September 9, 2004, the day after her refusal, and she worked her entire shift without the stool. There is no indication that her duties had changed or that she was treated inequitably upon her return. On September 10, 2004, she had difficulty during her shift, but had not yet provided the doctor's note she had promised to provide. She testified that Mr. Spring gave her two options: she could either complete the shift or go to her doctor to get the note specifically requiring the stool. Plaintiff's testimony indicates that Mr.

8

Spring did not threaten that she would lose her job, or that if she left she could not return. She went to her doctor's office and returned with a note. However, according to Plaintiff, Mr. Spring did not take the note from Plaintiff, and said that a meeting would have to be arranged with his superior to discuss the issue. Plaintiff then left the store, and alleged that she was not "called back or put on the schedule any more." (Pl. Depo. Tr. 114).

Plaintiff has not made any claim that Family Dollar expressly terminated her employment in September 2004, nor did she claim constructive discharge. Instead, she has merely implied a constructive discharge claim. While generally an employer may terminate an at-will employee for any or no reason, such a termination may not be based upon protected employee characteristics. Should an employer engage in discriminatory conduct that an employee claims forces him or her to resign, that conduct must make working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Kocsis*, 97 F.3d at 887 (6th Cir. 2002). The courts have held that, to support a claim of constructive discharge, a plaintiff must demonstrate aggravating factors that constitute "at least a continuous and severe pattern of discriminatory treatment." *Trepka v. Bd. of Ed.*, 28 Fed. Appx. 455, 463. In addition to these aggravating factors, there must be some evidence that the employee's resignation was the intended and foreseeable result of the employer's action. *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir. 1987).

In *Walker v. Nat'l Revenue Corp.*, 43 Fed. Appx. 800 (6th Cir. 2002), the plaintiff returned from leave to discover that several of his accounts had been transferred and he had not been paid bonuses on those accounts. He "unsuccessfully approached two supervisors on the subject, and quit." *Id*. He then claimed that he had been

9

constructively discharged.  The plaintiff's efforts to resolve the situation were limited to discussions with the two supervisors.  Furthermore, the Sixth Circuit noted that his supervisors were surprised to learn that he was quitting.  This did not satisfy the requirement that the plaintiff's resignation be the intended and foreseeable result of the employer's actions.  *Id.*, citing *Yates*, 819 F.2d at 637.  The court found that the plaintiff had failed to support his claim for constructive discharge.

The conduct of Plaintiff's supervisors in this instance does not support a claim of constructive discharge.  They warned Plaintiff in March 2004, that she needed a specific note from her doctor, and they provided her with the opportunity to obtain it.  She did not obtain the note at that time.  She promised to do so in September, but did not actually obtain the note without the prompting of her manager.  When her manager decided to call a meeting after she presented him with her note, Plaintiff left without resolving the situation or waiting for the result of the meeting.

The Family Dollar associates' handbook, offered as an exhibit to Plaintiff's deposition and acknowledged by Plaintiff as having been available at the store, made it clear that an associate should attempt to resolve disputes by talking with supervisors, district managers and finally the human resources department.  Plaintiff had admittedly followed this chain in the past when resolving workers' compensation and other disputes.[2]  While Plaintiff asserted that she made some phone calls to Mr. Spring about the meeting with the district manager, she did nothing more.

---

[2] The court notes that one such dispute was the first official encounter on the subject of the stool, in May 2004.  Plaintiff was told by Mr. Parker to contact Human Resources about what she needed to do to use her stool, and she was told to obtain a note from her doctor indicating that the stool was necessary.  She was aware that the Human Resources Department was available to her for questions on these issues.

It also appears that Family Dollar was uncertain about Plaintiff's intentions on September 10 and thereafter because it did not officially terminate her employment until February 2005.  Plaintiff's supervisors and managers offered her several opportunities to obtain the doctor's note and never threatened retaliation or negative consequences.  Given the managers' interactions with Plaintiff, it evidently was not their intent that she terminate her employment.

Furthermore, in order for a plaintiff to support a claim of constructive discharge, it must be clear that the alleged discharge resulted from the employee's reasonable perception of the employer's actions and not from the stubbornness or inaction of the employee.  *See Minor v. Centocor, Inc.*, 457 F.3d 632, 636 (7th Cir. 2006) (explaining that "[it is not enough that] a given employee perceives a burden . . . if that burden is attributable to the employee's own stubbornness or miscalculation.").  Management was evidently willing to allow her to use the stool if she provided a note from her doctor requiring it.  Plaintiff has not demonstrated how her own failure to comply actually amounts to her employer's making working conditions intolerable.

For the foregoing reasons, the Court finds that Plaintiff has failed to satisfy her burden of presenting a prima facie case of discrimination.  Assuming, arguendo, that Plaintiff had satisfied her burden, the Court would deny Defendants' motion for summary judgment because there appears to be a genuine issue of material fact regarding Plaintiff's claim that she is disabled.  While Defendants contend that she has not provided evidence of a disability, she has produced one expert report from her physician concluding that she is disabled.  However, as Plaintiff has failed to make or to support

any claim of an adverse employment action, the Court grants Defendants' Motion for Summary Judgment on the ADA and state law disability discrimination claims.

### B. Plaintiff's intentional infliction of emotional distress claim

Under Ohio law, a plaintiff claiming intentional infliction of emotional distress must show that "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it." *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio App. Ct. 1997).  See also, *Yeager v. Local Union 20*, 453 N.E.2d 666 (Ohio 1983).

Plaintiff has in no way demonstrated that Defendants engaged in outrageous and extreme conduct.  The decision by Plaintiff's supervisors to require a medical excuse in order for Plaintiff to use her stool was a reasonable managerial decision.  Their subsequent decision to enforce that requirement and to call a meeting with supervisors on the issue of Plaintiff's medical requirements was not outrageous.  Defendants cannot be held to account for Plaintiff's interpretation of those decisions.

Moreover, Plaintiff has not provided any evidence that she suffered emotional distress that was "serious and of such a nature that no reasonable person could be expected to endure it." *Ekunsumi*, 698 N.E.2d at 506.  The sum of her evidence to that effect was her own assertion that she has difficulty getting out of bed every day, and her

12

sister's affidavit stating that Plaintiff's "emotional state has changed significantly" since her employment ended, and that "[s]he cries frequently and otherwise appears to be depressed." While Ohio law does not require that a plaintiff present expert medical testimony to support a claim of intentional infliction of emotional distress, it does require that a plaintiff provide "evidence beyond [his or her] own testimony that [he or she] had suffered severe emotional distress." *Buckman-Pierson v. Brannon*, 822 N.E.2d 830, 841 (Ohio App. Ct. 2004). Plaintiff's sister's affidavit does not provide evidence of severe emotional distress.

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress is granted.

### CONCLUSION

Plaintiff has failed to support her claims of discrimination and intentional infliction of emotional distress. Therefore, Defendants' motion for summary judgment is granted.

IT IS SO ORDERED

Date: June 25, 2007                    \_\_/s/ John R. Adams_____
                                        JUDGE JOHN R. ADAMS
                                        UNITED STATES DISTRICT COURT